## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CHRISTOPHER BEST,

      Petitioner,

v.                                                                    Case No. 8:25-cv-1223-WFJ-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Christopher Best, a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 11). Mr. Best filed a reply. (Doc. 18). After careful review, the petition is **DENIED**.

## I.    Background

      Mr. Best was convicted of robbing a CVS store in St. Petersburg, Florida. On the evening of March 5, 2020, Mr. Best entered the store and asked an employee, Anna Pudlak, for help finding "antibiotic cream." (Doc. 11-2, Ex. 5, at 179-81). Ms. Pudlak told him where to find the cream and proceeded to "help[] another customer." (*Id.* at 181). Mr. Best picked up the cream and walked to a register. (*Id.* at 179, 182). After helping the other customer, Ms. Pudlak made her way to the register, "apologized for the wait," and "rang up [the] product." (*Id.* at 179). Ms. Pudlak heard Mr. Best "say something," but she "wasn't sure what it was." (*Id.*) The only words she could make out were "f*ck" and "register." (*Id.*

1

at 182). She asked, "What did you say?" (*Id.*) Mr. Best replied, "I have a f*cking gun under here. I'm gonna shoot your f*cking face off. Open up the f*cking register." (*Id.* at 183). As he said this, Mr. Best leaned on the counter "with his shirt over his hand." (*Id.* at 179).

In response, Ms. Pudlak told Mr. Best to "[g]o f*ck himself." (*Id.* at 241). She "stepped over to the next register," "picked up the phone," and "called for security." (*Id.* at 179). Mr. Best said, "I'm only joking," then walked out of the store with the antibiotic cream. (*Id.* at 179-80). Ms. Pudlak later testified that she did not "remember [Mr. Best] paying for" the cream, and surveillance footage appears to depict him pretending to scan a card at the register. (*Id.* at 187; *see also id.*, Ex. 20, at 9-10). In any event, Ms. Pudlak followed Mr. Best out and "took pictures of him getting into [a] cab." (*Id.*, Ex. 5, at 180). Later that evening, officers found Mr. Best, and Ms. Pudlak identified him as the robber. (*Id.* at 234-35, 285-86).

Mr. Best agreed to speak with law enforcement. (*Id.* at 265-66). He claimed that, while he was "purchasing" antibiotic cream, he "asked [Ms. Pudlak] about [CVS's] computer program." (*Id.* at 266). Mr. Best explained that "he used to work with a program called Homebase, and he asked [Ms. Pudlak] if the program was Homebase." (*Id.*) She responded, "Go f*ck yourself," and he replied "in kind," "Go f*ck yourself." (*Id.* at 267). Then, according to Mr. Best, "he left the [cream] and walked out." (*Id.*)

Mr. Best was charged with one count of robbery. (*Id.*, Ex. 4). The case went to trial, and the jury found Mr. Best guilty as charged. (*Id.*, Exs. 5, 8). After determining that he qualified as a prison releasee reoffender, the trial court sentenced Mr. Best to the mandatory minimum of fifteen years' imprisonment. (*Id.*, Ex. 10). Mr. Best's direct appeal was

2

unsuccessful, as were his efforts to challenge his conviction under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 26, 44, 47, 50, 53, 56). This federal habeas petition followed. (Doc. 1).

## II.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

3

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court in Mr. Best's case affirmed his conviction, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.    Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The

exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## C.     Ineffective Assistance of Counsel

Mr. Best alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of

professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Best must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Best must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

III.   **Discussion**

A.   **Ground One—Denial of Instruction on Afterthought Defense**

Mr. Best contends that the trial court violated his constitutional rights to due process and a fair trial by denying his request for an "afterthought" jury instruction. (Doc. 1 at 5). Robbery is the taking of property "from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the . . . property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1). The "afterthought defense provides that if the force or violence is motivated by a reason other than to rob the victim, then the taking of the property would not constitute a robbery." *Fernandez v. State*, 135 So. 3d 446, 447 (Fla. 2d DCA 2014). The taking "may still constitute theft," however. *Davis v. State*, 922 So.2d 438, 443 (Fla. 5th DCA 2006).

Respondent is correct that Mr. Best failed to exhaust this claim. Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). To exhaust a claim, a petitioner must "do more than scatter some makeshift needles in the haystack of the state-court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Thus, "a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015).

Mr. Best argued on direct appeal that the trial court "erred in denying [his] requested instruction on afterthought." (Doc. 11-2, Ex. 23 at 10). But Mr. Best couched his argument

in terms of state law. He relied on Florida cases concerning the afterthought defense to support his contention that "[i]t was error not to give the requested instruction." (*Id.* at 10-15). The only reference to a federal basis for the claim was a single sentence in the final paragraph of the section: "The error denied [Mr. Best] his rights to due process and a fair trial. Fifth, Sixth and Fourteenth Amendments, U.S. Constitution; Art. 1 Sections 2, 9, 16, and 22, Fla. Constitution." (*Id.* at 15). This "vague and passing reference" was "not enough to make the state court[] aware of the federal nature of his claim[]." *DiTullio v. Sec'y, Dep't of Corr.*, No. 22-13609, 2025 WL 784713, at *3 (11th Cir. Mar. 12, 2025) (petitioner failed to exhaust where "[t]he only reference in his state appellate briefs to a federal basis for his claim was a single vague allusion to his 'rights to due process and to a fair trial, as guaranteed by the Florida and United States Constitutions' in the final sentence of the section"). Indeed, "[t]he mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim." *Means v. Sec'y, Dep't of Corr.*, No. 1:14-cv-230-WTH-GRJ, 2018 WL 992027, at *1 (N.D. Fla. Feb. 20, 2018). "Because the gravamen of his claim, as presented to the state court[], dealt with state law," Mr. Best "failed to exhaust his federal claim." *Preston*, 785 F.3d at 458.[1]

---

[1] *See also McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (no exhaustion where petitioner cited one federal district court decision and argued that he suffered violation of rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law"); *Snyder v. Fla. Dep't of Corr.*, No. 23-12972, 2024 WL 4867047, at *1 (11th Cir. Nov. 22, 2024) ("[Petitioner's] single reference to the due process clauses of the state and federal constitutions in the closing paragraph of his argument failed to put the state court on notice of the federal issue."); *Ramos v. Sec'y, Fla. Dep't of Corr.*, 441 F. App'x 689, 696-97 (11th Cir. 2011) (no exhaustion where sole reference to federal law was statement that "this evidence was so devastatingly prejudicial that its introduction

Mr. Best cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, Ground One is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Because Mr. Best offers no basis to excuse the default, his claim is barred from federal habeas review.[2]

### B.    Grounds Two and Three—Denial of Motion for Judgment of Acquittal

Mr. Best argues that the trial court violated his constitutional rights to due process and a fair trial by denying his motion for judgment of acquittal. (Doc. 1 at 6-9). According to Mr. Best, the evidence was insufficient to prove that (1) he failed to pay for the antibiotic cream, and (2) "the alleged taking of the cream was not an afterthought to the alleged threat . . . to open the register." (*Id.* at 6-8).

Mr. Best's sufficiency challenge is unexhausted because he failed to present the federal nature of his claim on direct appeal. In his appellate brief, he argued that the trial court committed "error" by "deny[ing] the motion for judgment of acquittal." (Doc. 11-2, Ex. 23, at 15, 17-18). But he did not cite the United States Constitution or any other source of federal law. Nor did he "label[] the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32

---

violated [petitioner's] Florida and federal constitutional rights to due process and a fair trial and the error was fundamental").

[2] Even if Mr. Best's claim of instructional error were not defaulted, it would fail on the merits for the reasons ably explained by Respondent. (Doc. 11 at 14-17).

(2004). Instead, Mr. Best relied entirely on Florida caselaw to support his argument that the evidence was insufficient to support the robbery conviction. (Doc. 11-2, Ex. 23, at 15-20). Because Mr. Best "did not raise any federal claims or cite to any federal cases in state court when presenting his argument on the sufficiency of the evidence," he "failed to fairly present his federal sufficiency-of-the-evidence claim to the Florida state courts and thus did not exhaust his state court remedies as to that claim." *Cascante v. Florida*, 816 F. App'x 429, 431 (11th Cir. 2020); *see also Preston*, 785 F.3d at 459 (holding that federal sufficiency-of-the-evidence claim was not exhausted because petitioner "asserted in his [state appellate] brief that his conviction rested on insufficient evidence, without clarifying whether he intended to bring a federal or a state sufficiency of the evidence claim"); *Gallagher v. Sec'y, Fla. Dep't of Corr.*, No. 22-13954, 2024 WL 3289639, at *2 (11th Cir. July 3, 2024) ("[B]ecause [petitioner] never cited . . . any [] federal case when arguing in the state court that there was insufficient evidence for a conviction that would alert the state courts to the federal nature of his claim, he did not 'fairly present' the issue to the state courts.").

Mr. Best cannot return to state court to present his unexhausted sufficiency challenge in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). Therefore, Grounds Two and Three are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. Best

offers no basis to excuse the default, so his sufficiency challenge is barred from federal habeas review.[3]

### C.    Ground Four, Sub-Claim A—Failure to Request Instruction on Lesser-Included Offenses

Mr. Best contends that trial counsel was ineffective for failing to request lesser-included offense instructions for attempted robbery and "retail theft." (Doc. 1 at 10). According to Mr. Best, the omission of these instructions deprived the jury of "access to . . . vital information on viable options they could have had" for convicting him of a "lesser-included offense instead of robbery."[4] (*Id.* at 11).

The postconviction court correctly rejected this claim. (Doc. 11-2, Ex. 44, at 2-3). Florida law requires a jury to "render a true verdict according to the law and the evidence." *Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006). Thus, a jury may convict of a lesser-included offense "only if it decide[s] that the main accusation has not been proved beyond a reasonable doubt." *Id.* In accord with this principle, the jury in Mr. Best's case was instructed that if it "return[ed] a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt." (Doc. 11-2, Ex. 7, at 18). The Court must assume that the jury followed this instruction. *See Strickland*, 466 U.S. at 694 ("[A] court should presume . . . that the judge or jury acted according to law."). As noted above, the jury found Mr. Best guilty of robbery—a higher offense than attempted robbery or retail

---

[3] Even if the sufficiency challenge were not defaulted, Mr. Best would not be entitled to relief. For the reasons explained in the State's appellate brief, a rational jury could find beyond a reasonable doubt that Mr. Best committed robbery. (Doc. 11-2, Ex. 24, at 18-27).

[4] The jury was instructed on two other lesser-included offenses—petit theft and assault. (Doc. 11-2, Ex. 5, at 426-28).

theft. (Doc. 11-2, Ex. 8). Therefore, "even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [Mr. Best] of the lesser-included offenses because it had concluded that the evidence established that he was guilty of the greater offense[ ]." *Crapser v. Sec'y, Dep't of Corr.*, 855 F. App'x 626, 628 (11th Cir. 2021).

Mr. Best's claim "depends . . . on the possibility of a jury pardon—that is, that the jury would have disregarded its oath and violated its instructions by acquitting him of the greater offense and convicting him of a lesser one even though the evidence supported both crimes." *Id.* "The possibility of a jury pardon, however, cannot establish prejudice under *Strickland*." *Thornton v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-762-MMH-PDB, 2021 WL 2073685, at *9 (M.D. Fla. May 24, 2021); *see also Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888, 889 (11th Cir. 2012) ("The jury in [petitioner's] trial concluded that the evidence against him supported his conviction for the greater offenses on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [petitioner] of the lesser-included offenses because it had concluded that the evidence established that he was guilty of the greater offenses."). Therefore, the postconviction court correctly rejected this claim.

### D.    Ground Four, Sub-Claim B—Failure to Raise Additional Arguments in Support of Motion for Judgment of Acquittal

Mr. Best faults trial counsel for failing to raise two additional arguments in support of his motion for judgment of acquittal. (Doc. 1 at 11). First, counsel allegedly should have argued that no robbery occurred because Ms. Pudlak, the CVS employee, "had no fear" during the incident. (*Id.*) According to Mr. Best, a "fearful person would not have picked

up the phone to call security during a robbery, would not have told the robbery suspect to go f*ck himself, and would not have followed a robbery suspect out of the store to capture them on their cell phone." (*Id.*) Second, counsel allegedly failed to argue that "[t]he State did not prove a theft, because [Ms. Pudlak] could not say if [Mr. Best] had purchased the cream or not." (*Id.*)

As for the first assertion of ineffective assistance, the postconviction court held that Mr. Best was "not entitled to relief because counsel was not deficient and [Mr. Best] was not prejudiced." (Doc. 11-2, Ex. 44, at 5). As noted above, robbery requires proof that "in the course of the taking there [was] the use of force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1). Here, the prosecution principally relied on taking by "putting in fear" to establish the robbery. (Doc. 11-2, Ex. 5, at 380-82). As the postconviction court explained, "[f]or a 'fear'-based robbery, the controlling factor is whether a reasonable person would have felt threatened, not whether the victim was actually afraid." (*Id.*, Ex. 44, at 5; *see also Magnotti v. State*, 842 So. 2d 963, 965 (Fla. 4th DCA 2003) ("[I]f the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to be in fear for the purpose of the robbery statute, and actual fear need not be proved.")). Ms. Pudlak testified that Mr. Best "had his shirt over his hand" as he told her, "I have a f*cking gun under here. I'm gonna shoot your f*cking face off. Open up the f*cking register." (Doc. 11-2, Ex. 44, at 5; *see also* Doc. 11-2, Ex. 5, at 179, 183). A "reasonable person under like circumstances would be sufficiently threatened to accede to [Mr. Best's] demands." *Brown v. State*, 397 So. 2d 1153, 1155 (Fla. 5th DCA 1981). As the postconviction court correctly held, "the threat to

13

shoot [Ms. Pudlak,] combined with the threatening gesture of holding something under his shirt[, was] sufficient to overcome a motion for a judgment of acquittal on this issue." (*Id.*, Ex. 44, at 5). Thus, counsel was not deficient for failing to raise Mr. Best's meritless argument. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

Mr. Best also faults counsel for failing to argue that no theft occurred "because [Ms. Pudlak] could not say if [he] had purchased the cream." (Doc. 1 at 11). Respondent contends that this assertion of ineffective assistance is unexhausted, but the Court need not reach that issue because it fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."). Contrary to Mr. Best's argument, counsel *did* seek a judgment of acquittal on the ground that "[t]here [was] no evidence of taking without payment." (Doc. 11-2, Ex. 5, at 308). Specifically, counsel argued that no taking occurred because Ms. Pudlak "didn't recall if she took money from [Mr. Best] or [if] he had made payment." (*Id.* at 312). Thus, Mr. Best "fails to demonstrate either deficient performance or prejudice because counsel raised the arguments that [Mr. Best] asserts counsel should have raised." *Adams v. Sec'y, Fla. Dep't of Corr.*, No. 3:20-cv-442-MMH-LLL, 2024 WL 3690813, at *6 (M.D. Fla. Aug. 7, 2024).

### E.   Ground Four, Sub-Claim C—Failure to Object to Improper Comment

According to Mr. Best, counsel should have objected to the prosecution's "incorrect statement" in closing argument. (Doc. 1 at 12). Mr. Best accuses the prosecution of "misinform[ing] the jury on the . . . elements required for the crime of robbery." (*Id.*) In

Mr. Best's words, the prosecution told the jury that "robbery was nothing more than theft with force." (*Id.*) In fact, the prosecution said, "[I]f you believe that the assault and the theft occurred and it happened contemporaneously, at the same time, then we are back to robbery." (Doc. 11-2, Ex. 5, at 383-84). The prosecution also said, "[I]f during that theft, in the course of that theft if you use force, if you assault, if you place someone in fear while you are stealing, we are not dealing with just a theft anymore. We're dealing with a robbery." (*Id.* at 403). Mr. Best argues that, if counsel had "objected to the State's prejudicial comments, the jury would have been better informed on the elements required, and not just what the state attorney claimed they were." (Doc. 1 at 12).

The postconviction court rejected this claim, finding that counsel was "not deficient for failing to make a meritless objection, and [Mr. Best] was not prejudiced." (Doc. 11-2, Ex. 44, at 6). As the court pointed out, the prosecution "argued that if an assault and a theft occurred, and they occurred at the same time, 'then we are back to robbery.'" (*Id.*) According to the court, "these arguments [were] more loosely phrased than the specific wording of the statute," but "they [were] not misleading in this case." (*Id.*) "[G]enerally speaking," the court explained, "the difference between theft and robbery is simply the use of force." (*Id.*) Thus, the trial court "would have likely overruled" any "objection" to the prosecution's description of the elements of robbery. (*Id.*)

This ruling was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a federal court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Such deference is required

here. The postconviction court held that, as a matter of Florida law, the prosecution's description of robbery was "not misleading." (Doc. 11-2, Ex. 44, at 6). Thus, the postconviction court "already has told us how the issue[] would have been resolved under Florida state law had [counsel] done what [Mr. Best] argues [they] should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). That determination is binding on federal habeas review. *See Peterson v. Sec'y, Dep't of Corr.*, No. 8:19-cv-987-KKM-AEP, 2023 WL 6621078, at *14 (M.D. Fla. Oct. 11, 2023) ("Whether the prosecutor misstated state law is an issue of state law, and a state court's determination of state law receives deference in federal court."); *O'Brien v. Sec'y*, No. 1:10-cv-189-MP-GRJ, 2013 WL 5460578, at *8 (N.D. Fla. Sept. 27, 2013) (noting that state court "concluded that the [prosecution's] remarks were not a misstatement of Florida law, an interpretation of state law entitled to deference by the federal habeas court").

Because the postconviction court "authoritatively decided as a matter of [Florida] law" that the prosecution's statements were not misleading, the remainder of the analysis is straightforward. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). "[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). Thus, the postconviction court reasonably concluded that counsel was not deficient for failing to raise Mr. Best's meritless objection.

Deference aside, Mr. Best cannot show prejudice from the prosecution's remarks. After closing statements, the trial court provided the jury with Florida's standard instructions on robbery. (Doc. 11-2, Ex. 5, at 424-26; *see also* Fla. Std. Jury Instr. (Crim.)

15.1). The court also informed the jury that "what the attorneys say is not evidence or your

instruction on the law." (Doc. 11-2, Ex. 5, at 370). Thus, "any possible prejudice was cured

by the trial court's correct jury instructions."[5] *Johnson v. Alabama*, 256 F.3d 1156, 1185

(11th Cir. 2001); *see also Miller v. Sec'y, Dep't of Corr.*, No. 8:17-cv-1595-VMC-AEP,

2018 WL 3155700, at *12 (M.D. Fla. June 28, 2018) (no prejudice from failure to object

to prosecutor's alleged "misstate[ment] [of] the law" because trial court "instructed the jury

that it was to follow the law as set out in the jury instructions, and instructed the jury on

the elements of first degree murder and second degree murder"); *Williams v. Dixon*, No.

4:22-cv-3-MW-ZCB, 2025 WL 890520, at *7 (N.D. Fla. Jan. 13, 2025) (any "potential

prejudice from any misstatements of the elements by the prosecutor was sufficiently

ameliorated by the trial judge's instructions"), *adopted by* 2025 WL 1068575 (N.D. Fla.

Apr. 9, 2025).

### F.    Ground Four, Sub-Claim D—Misadvice about Testifying at Trial

Mr. Best faults trial counsel for advising him not to testify at trial. (Doc. 1 at 12).

According to Mr. Best, counsel told him that "his testimony would not be necessary

because [Ms. Pudlak] was not going to testify, and . . . the most he could be found guilty

of was . . . theft." (*Id.*) Yet Ms. Pudlak "did testify," and Mr. Best says he should have

taken the stand to "refute" her allegedly "false statements." (*Id.*) Specifically, Mr. Best

would have testified that he "did use profanity toward" Ms. Pudlak "but did not threaten

---

[5] Mr. Best appears to take issue with the prosecution's description of the lesser-included offenses of petit theft and assault. (Doc. 1 at 12). But he fails to identify anything misleading in the prosecutor's statements. Regardless, any potential prejudice was cured when the trial court provided the jury with Florida's standard instructions on petit theft and assault. (Doc. 11-2, Ex. 5, at 426-28; *see also* Fla. Std. Jury Instr. (Crim.) 8.1, 14.1).

her," that he did not try to "rob the CVS of any merchandise," and that he "pa[id] for" the antibiotic cream. (Doc. 11-2, Ex. 43, at 12).

The postconviction court reasonably concluded that Mr. Best suffered no prejudice from counsel's alleged misadvice. (*Id.*, Ex. 44, at 7-8). A fairminded jurist could find no "reasonable probability that the results of the trial would have been different had [Mr. Best] testified in his own defense." *Lee v. Culliver*, 300 F. App'x 689, 691 (11th Cir. 2008). At the time of trial, Mr. Best was a six-time convicted felon. (Doc. 11-2, Ex. 11). Thus, if he had testified, Mr. Best "would have been subject to cross-examination and the jury would have learned that he had a criminal history, which could have damaged his credibility and undermined his" defense. *Preston v. Sec'y, Dep't of Corr.*, 745 F. App'x 835, 839 (11th Cir. 2018); *see also Strozier v. Newsome*, 871 F.2d 995, 999 (11th Cir. 1989) ("[Petitioner's] decision to testify resulted in the introduction of prior convictions which may have had a substantial impact on the jury.").

Moreover, even without his testimony, Mr. Best was able to present his version of events at trial. The jury heard the statements Mr. Best made to law enforcement after he was taken into custody. As noted above, he told law enforcement that he "asked [Ms. Pudlak] about [CVS's] computer program" while he was "purchasing" antibiotic cream. (Doc. 11-2, Ex. 5, at 266). According to Mr. Best, "he used to work with a program called Homebase, and he asked [Ms. Pudlak] if the program was Homebase." (*Id.*) Ms. Pudlak responded, "Go f*ck yourself," to which Mr. Best replied, "Go f*ck yourself." (*Id.* at 267). Then, according to Mr. Best, "he left the [cream] and walked out." (*Id.*) The jury learned that, according to Mr. Best, he "had purchased" the cream. (*Id.*) In closing, counsel argued

that Mr. Best and Ms. Pudlak had "some kind of weird exchange" involving "a miscommunication," but that the prosecution "failed to prove a robbery was committed by Mr. Best." (*Id.* at 396, 400). Therefore, counsel presented Mr. Best's defense to the jury without his testimony. And while Mr. Best could have elaborated on the story by taking the stand, such testimony would have "come at a high price"—his "extensive criminal record . . . would have come into evidence." *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002). Mr. Best's testimony "*might* have persuaded," but the Court cannot say "there is a reasonable probability that it would have done so." *Id.*

### G.    Ground Four, Sub-Claim E—Failure to Object to Sentencing as Prison Releasee Reoffender

According to Mr. Best, trial counsel should have argued that his fifteen-year sentence for robbery was unconstitutional because a judge, rather than a jury, found that he qualified as a prison releasee re-offender ("PRR"). (Doc. 1 at 13). A PRR is "a defendant who commits . . . an enumerated offense . . . within three years after being released from a correctional facility." *Marshall v. State*, 277 So. 3d 1149, 1150 (Fla. 1st DCA 2019). "If the state seeks PRR sentencing and proves that the defendant is a PRR, the court must sentence the defendant to at least fifteen years of imprisonment for a second-degree felony [such as robbery]." *Id.* In Mr. Best's view, a jury should have determined the facts necessary to qualify him as a PRR—namely, whether he committed the robbery within three years of his release from prison. (Doc. 11-2, Ex. 45, at 12-15). He cites *Alleyne v. United States*, which holds that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury." 570 U.S. 99, 103 (2013).

The postconviction court found that "counsel was not deficient" for failing to raise this argument. (Doc. 11-2, Ex. 47, at 2-3). The court explained that Mr. Best was "incorrect" to assert "that the jury, and not the judge, must make the finding" necessary to qualify him as a PRR. (*Id.*) This ruling was reasonable. At the time of Mr. Best's sentencing in May 2021, the Second District Court of Appeal had already held that "the jury is not required to make the PRR factual determination because [Supreme Court precedent] carved out a specific exception for recidivist statutes."[6] *Lopez v. State*, 135 So. 3d 539, 540 (Fla. 2d DCA 2014). The Second District reasoned that, "because a defendant's date of release from a prior prison sentence is directly derivative of a prior conviction, it need not be found by a jury beyond a reasonable doubt in order for a defendant to be subject to a PRR sentence." *Robinson v. State*, 337 So. 3d 1275, 1276 (Fla. 2d DCA 2022) (citing *Lopez*, 135 So. 3d at 540). This precedent was binding on the trial court when it sentenced Mr. Best. *See Stanfill v. State*, 384 So. 2d 141, 143 (Fla. 1980) (noting that "[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme Court]"). Counsel was not deficient for deciding to "forego a claim that was a loser under the then-current state of the law."[7] *Jones v. United States*, 224 F.3d 1251, 1258 (11th Cir. 2000).

---

[6] Mr. Best was tried in the Sixth Judicial Circuit Court, which falls within the jurisdiction of the Second District Court of Appeal. Fla. Stat. § 35.03.

[7] In his petition, Mr. Best cites the Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821 (2024). (Doc. 1 at 13). The Second District has yet to address *Erlinger*'s impact on PRR sentencing. *See Flournoy v. State*, 415 So. 3d 806, 808 (Fla. 2d DCA 2025) (declining to "decide whether, pursuant to *Erlinger*," PRR "findings must, at a defendant's request, be made by the jury"). Regardless, *Erlinger* was decided well after Mr. Best's sentencing, and counsel cannot be deficient for "failing to predict what was not yet a certain holding." *Black v. United States*, 373 F.3d 1140, 1146 (11th Cir. 2004); *see also Geter v.*

### H.    Ground Four, Sub-Claim F—Misadvice Concerning Plea Offer

Lastly, Mr. Best argues that trial counsel "misadvised [him] concerning a pretrial [plea] offer made by the State." (Doc. 1 at 13). According to Mr. Best, counsel advised him not to accept the State's twelve-year offer because (1) he "had a better than fifty-percent chance of acquittal" and (2) the "worst-case scenario . . . was getting found guilty of theft." (Doc. 11-2, Ex. 49, at 11). This "erroneous advice" allegedly caused Mr. Best to reject the plea offer. (*Id.* at 12). Had he received competent advice, Mr. Best allegedly would have accepted the offer and received a sentence of twelve years' imprisonment, a "less severe" punishment than the fifteen-year sentence he currently serves. (*Id.* at 13-14).

Respondent correctly contends that this claim is procedurally defaulted. (Doc. 11 at 31-32). Mr. Best raised his assertion of ineffective assistance in a successive Rule 3.850 motion. (Doc. 11-2, Ex. 49, at 11-15). The postconviction court rejected the claim as "successive," explaining that "[t]here [was] no reason [Mr. Best] could not have raised" it in his prior Rule 3.850 motion. (*Id.*, Ex. 50, at 2; *see also* Fla. R. Crim. P. 3.850(h) (barring the filing of second or successive postconviction motions)). Because "the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds," Mr. Best's claim is procedurally defaulted. *LeCroy v. Sec'y, Fla. Dep't Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005).

---

*United States*, 534 F. App'x 831, 836 (11th Cir. 2013) ("It is well-settled that an attorney's failure to anticipate a change in the law will not support a claim of ineffective assistance of appellate counsel." (collecting cases)).

To overcome the default, Mr. Best must show either cause and prejudice or a miscarriage of justice. *See Mincey v. Head*, 206 F.3d 1106, 1135 (11th Cir. 2000) ("It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'"). Mr. Best offers no basis to excuse the default. Therefore, his ineffective-assistance claim is barred from federal habeas review.

Mr. Best could have—but did not—rely on the equitable exception recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012). That is "reason enough to disregard *Martinez* here." *Brown v. Dixon*, 591 F. Supp. 3d 1251, 1273 n.6 (S.D. Fla. 2022). But even if Mr. Best had invoked *Martinez*, he would not be entitled to relief. *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit." *Martinez*, 566 U.S. at 14, 17. A petitioner shows that his defaulted claim is "substantial" by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

*Martinez* does not excuse the default because Mr. Best's ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. "*Strickland*'s two-part inquiry applies to ineffective assistance of counsel arising out of the plea process." *Osley v. United States*,

751 F.3d 1214, 1222 (11th Cir. 2014). A "critical obligation of counsel [is] to advise the client of the advantages and disadvantages of a plea agreement." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010). Still, "[c]ourts must indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). Moreover, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Lafler v. Cooper*, 566 U.S. 156, 174 (2012).

Mr. Best contends that counsel advised him to reject the plea offer based on an overly optimistic assessment of his odds at trial. (Doc. 1 at 13; Doc. 11-2, Ex. 49, at 11). But Mr. Best "does not claim that counsel precluded him from accepting the offer; nor does he deny that it was his choice to reject the offer and proceed to trial." *United States v. Patterson*, 525 F. App'x 681, 685-86 (10th Cir. 2013). And "even accepting [Mr. Best's] allegations that counsel overestimated the strength of his case, such advice constitutes a bad prediction, not gross misadvice amounting to deficient performance." *Lawrenson v. Sec'y, Dep't of Corr.*, No. 8:15-cv-2078-SDM-TGW, 2018 WL 6787996, at *15 (M.D. Fla. Dec. 26, 2018). The trial court heard lengthy argument on Mr. Best's motion for judgment of acquittal. (Doc. 11-2, Ex. 5, at 304-51). The court initially described the prosecution's case as "problematic" because "there [was] no evidence that [Mr. Best] stole" the antibiotic cream. (*Id.* at 308). The court ultimately denied the motion for judgment of acquittal, but it invited counsel to move for judgment notwithstanding the verdict if Mr. Best was convicted. (*Id.* at 351). Indeed, the court noted that it had "never even had one of those"—that is, "argument for [judgment notwithstanding the verdict] after the trial." (*Id.*)

Counsel renewed the arguments for acquittal in a written post-trial motion, which was denied after the court heard oral argument from the parties. (*Id.*, Exs. 15-21). On this record, the Court cannot say that counsel's assessment of the case was "patently unreasonable." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983); *see also Richter*, 562 U.S. at 110 ("Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight.").

## IV. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Best's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Best and to **CLOSE** this case.

3. Mr. Best is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Best must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Best has not made the requisite showing. Because Mr. Best is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on January 12, 2026.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE